UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                   )
UNITED STATES OF AMERICA,          )
                                   )
                                   )
     v.                            )   Cr. No. 23-52 WES
                                   )
RYAN DACRUZ,                       )
                                   )
     Defendant.                    )
                                   )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

Defendant Ryan DaCruz is charged with one count of felon in possession of ammunition under 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Indictment, ECF No. 21. Pending now is his motion to suppress evidence obtained from his residence in Central Falls, Rhode Island, pursuant to a search warrant issued on May 31, 2023. Def.'s Mot. to Suppress ("Def.'s Mot.") 1, ECF No. 32; Resp. to Def.'s Mot. to Suppress ("Opp'n") 1-2, ECF No. 34. Defendant argues that a protective sweep conducted prior to the issuance of the search warrant of his girlfriend's apartment where he resided was done in violation of his Fourth Amendment rights. Def.'s Mot. 3. He further argues that, because the protective sweep was illegal, the evidence obtained during the search should be excluded as fruit of the poisonous tree. Id. For the reasons that follow, Defendant's Motion is DENIED.

I. Facts

On May 31, 2023, officers from the Providence Field Office of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), with the Central Falls Police Department ("CFPD"), established surveillance at Defendant's alleged residence, 991 Lonsdale Avenue, Apartment 1, in Central Falls, Rhode Island.  GXB, Ventetuolo Aff. ¶ 3, ECF No. 34-2.  Officers were there to execute a federal search warrant for Defendant's person and cellphone. Id.  A CFPD-marked cruiser drove to the parking area located behind a multi-family structure where Defendant stood outside of his vehicle.  Id.  CFPD officers approached Defendant, identified themselves, and directed him to raise his hands.  Id.

Upon questioning by the officers, Defendant stated that he had marijuana in his backpack and that additional marijuana was in the apartment, but no other drugs.  Ventetuolo Aff. ¶¶ 9-10, ECF No. 1-1.  Officers handcuffed Defendant and located the marijuana in the backpack.  Id. ¶ 9.  Officers also located the cellphone that was the target of the search warrant.  Id.  When asked, Defendant did not provide officers with consent to search the apartment to retrieve the marijuana, explaining that it was his girlfriend's apartment and that he did not live there.  Id. ¶ 10. This assertion contradicted ATF's surveillance of the address showing Defendant regularly staying overnight there.  GXA, Search

Warrant ¶ 10, ECF No. 34-1. Defendant offered to enter the apartment and retrieve the remaining marijuana. Ventetuolo Aff. ¶ 10. The encounter lasted several minutes. Id. ¶ 11.

At the time, officers knew the dwelling contained multiple apartments and that the front door opened to a common area. See GXB ¶¶ 5-6. Other than that, officers were not aware of the structure of Apartment 1 or whether other residents of the building could access Apartment 1. Id. ¶ 6. And officers did not know if anyone else lived in, or occupied at the time, Apartment 1 besides Defendant and his girlfriend. Id. ¶ 7. Officers believed that Apartment 1's windows faced towards the driveway and rear parking area where the encounter took place . Id. ¶ 5.

When officers approached Apartment 1 (wearing ballistic vests marked "ATF"), they knocked on the door, identified themselves, and received no response. Ventetuolo Aff. ¶ 11; GXB ¶ 9; GXC, Axon Body video of Task Force Officer Matthew McGloin at 0:05, ECF No. 34-3. "To prevent the destruction of evidence and preserve the integrity of the residence," while officers sought a search warrant for the apartment, officers entered Apartment 1. Ventetuolo Aff. ¶ 11. They then conducted a protective sweep of the apartment and saw in plain view on a storge rack a small bag containing a white powder similar in appearance to crack cocaine. Id. The protective sweep lasted less than one minute. GXB ¶ 10.

Officers included the presence of cocaine, among other evidence, in the affidavit in support of the search warrant to establish probable cause to search the apartment, which was signed and executed. See GXA ¶ 14. The officers ultimately discovered and seized, inter alia, ammunition in the apartment during the search authorized by the warrant. Ventetuolo Aff. ¶¶ 14-16. Defendant only moves to suppress the ammunition. Def.'s Mot. 3.

II. Discussion

Defendant argues the protective sweep violated his Fourth Amendment rights, and, under the fruit of the poisonous tree doctrine, the subsequent granting of the search warrant, the search of the apartment pursuant to the warrant, and the discovery of the ammunition that forms the basis of the charges against him also violated his Fourth Amendment rights. Def.'s Mot. 3. Not only does the government argue that the protective sweep was legal and reasonable, but also, in the alternative, it argues the ammunition found in the apartment is admissible under the inevitable discovery and independent source doctrines. Opp'n. 10-22.

Starting with first principles, the Fourth Amendment of the U.S. Constitution prohibits, inter alia, unreasonable searches of peoples' homes and, with a few exceptions, requires police to obtain a warrant prior to commencing such a search. U.S. Const. amend. IV; Katz v. United States, 389 U.S. 347, 357 (1986). Defendant bears a threshold burden of showing a Fourth Amendment

4

violation. United States v. Young, 835 F.3d 13, 19 (1st Cir. 2016); see also Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978). Only after Defendant has shown he was subjected to a warrantless search does the burden shift to the government to establish the intrusion was nonetheless lawful. United States v. Manubolu, 13 F.4th 57, 69 (1st Cir. 2021).

    A. Protective Sweep

An exception to the rule requiring a warrant to search an individual's house is for protective sweeps conducted in conjunction with an individual's arrest. Maryland v. Buie, 494 U.S. 325, 327 (1990). A protective sweep is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." Id. Such a sweep "is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Id. Although protective sweeps often take place following an arrest within the home, the First Circuit has allowed protective sweeps "when an arrest 'occurs just outside the home,' because such an arrest 'can pose an equally serious threat to arresting officers as one that occurs in the home.'" United States v. Delgado-Perez, 867 F.3d 244, 251 (1st Cir. 2017) (quoting United States v. Lawlor, 406 F.3d 37, 41 (1st Cir. 2005)). The doctrine has been extended to include protective sweeps in conjunction with the execution of search warrants, Drohan v. Vaughn, 176 F.3d 17, 20, 22 (1st Cir. 1999), and where exigent

5

circumstances exist, United States v. Martins, 413 F.3d 139, 150-51 (1st Cir. 2005), cert. denied, 546 U.S. 1011 (2005), abrogated on other grounds by Hill v. Walsh, 884 F.3d 16, 19 (1st Cir. 2018).

Protective sweeps are permissible only where there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Buie, 494 U.S. at 334. An officer needs reasonable suspicion to execute a protective sweep. United States v. Daoust, 916 F.2d 757, 759 (1st Cir. 1990). Though reasonable suspicion is "considerably less demanding than the level of proof required to support a finding of probable cause," Martins, 413 F.3d at 149, there must be "more than an unfounded speculation," United States v. Winston, 444 F.3d 115, 118 (1st Cir. 2006) (citing United States v. Cook, 277 F.3d 82, 85 (1st Cir. 2002)).

The government heavily relies on Lawlor to support its argument that the protective sweep was reasonable. See Opp'n. 11-15. There, the First Circuit found the protective sweep was sound because a "reasonably prudent officer" would have feared the residence harbored a dangerous individual. Lawlor, 406 F.3d at 42. The sweep was justified by reports of gunshots at the scene, the officer's knowledge that the defendant and his brother were involved in the drug trade, and observations of individuals

6

routinely visiting the residence. Id. At the scene, the defendant was outside the residence intoxicated with another intoxicated individual with whom the officer was not familiar. Id. Outside of the defendant's residence were spent shotgun shells. Id. When asked the location of the gun, the defendant shrugged his shoulders. Id. The Court agreed the officer was justified in entering the residence and conducting a protective sweep out of fear there could be a third person who could attack the officer. Id. at 42-43.

In Winston, another First Circuit case the government relies on, see Opp'n 15, the officers had knowledge to believe the defendant and others were armed and dangerous, 444 F.3d at 118. The defendant had already been indicted for his participation in a "large-scale cocaine trafficking ring" and officers were informed the defendant purchased two handguns and a bullet-proof vest. Id. Additionally, the defendant's girlfriend deceived officers as to the location of the defendant's car, possibly to give the defendant and his associates time to escape, hide, and prepare an ambush. Id. Finally, when officers called out the defendant's name, his response made officers believe he and his associates were attempting to escape or incite an ambush. Id. at

118-19. Those circumstances, the court held, gave the officers reasonable suspicion to conduct a protective sweep.[1] Id. at 119

Here, unlike in Lawlor and Winston, the government failed to meet its burden of showing it was entitled to conduct a protective sweep. The government argues the sweep was justified based on the ATF's knowledge that Defendant had a history of gang violence, was part of a gang feud, was involved in the drug trade, and had a prior conviction for unlawfully carrying a firearm. Opp'n. 13-14. Further, the government emphasizes the officers executed the initial search warrant because of Defendant's alleged role in a suspected gang violence incident, so the government had reason to believe Defendant was a dangerous person and associated with other dangerous people. See id. at 13, 13 n.5.

The officer's above-described knowledge in conjunction with what transpired on May 31 did not give officers reasonable suspicion that they were in danger such that a protective sweep was warranted. It is true that, when the officers executed the

---

[1] A similar set of circumstances established reasonable suspicion to conduct a protective sweep. In United States v. Martins, the First Circuit stated that, taken together, the following set of facts were sufficient for the officers to conduct a warrantless sweep in the name of officer safety: "the high-crime area, the shootings, their connection with the apartment, the officer's experience and knowledge anent gang behavior, the evasive action of the adult known to be present behind the door, and the seeming attempt to misinform." 413 F.3d 139, 150-51 (1st Cir. 2005), cert. denied, 546 U.S. 1011 (2005), abrogated on other grounds by Hill v. Walsh, 884 F.3d 16, 19 (1st Cir. 2018).

8

search warrant, they reasonably believed drugs were inside the apartment. See id. at 14. And the officers were not familiar with Apartment 1 or how the multi-family residence was structured, and did not know whether there was anyone else in the apartment or if anyone could access the apartment. Id. at 14-15. But ATF had been surveilling the apartment since April 20, 2023, and made no assertion that they observed anyone other than Defendant and his girlfriend enter the apartment. See GXA ¶¶ 10-11. At the same time, officers had access to windows they believed (and later confirmed) were associated with Apartment 1. Opp'n.at 4.

Taken together, unlike the officers in Lawlor and Winston, the officers here did not have reasonable suspicion to believe a person in the apartment posed a danger to them. There was no evidence of violence at or near 991 Lonsdale Avenue, no particularized reason to believe Defendant's girlfriend or anyone else was armed and dangerous, and no particularized evidence that anyone was in the residence. See Delgado-Perez, 867 F.3d at 253. A "[l]ack of information cannot provide an articulable basis upon which to justify a protective sweep." Id. at 256 (quoting United States v. Colbert, 76 F.3d 773, 778 (6th Cir. 1996)); see also United States v. Carter, 360 F.3d 1235, 1242-43 (10th Cir. 2004) ("Of course, there could always be a dangerous person concealed within a structure[,] . . . that in itself cannot justify a protective sweep, unless such sweeps are simply to be permitted as

9

a matter of course, a result hardly indicated by the Supreme Court in Buie."). Moreover, the general relationship between firearms and drug trafficking is insufficient, on its own, to demonstrate a danger to officers. See Delgado-Perez at 254. Unlike the defendant in Winston, although Defendant here had an alleged history of being dishonest and told officers he did not live in Apartment 1, GXA ¶ 6; Ventetuolo Aff. ¶ 10, there was no evidence to give officers a reasonable belief Defendant was using deception to endanger them, see Winston, 44 F.3d at 117.

Because officers subjected Defendant to a warrantless search, and the government has failed to meet its burden of showing there was reasonable suspicion for a protective sweep, the Court concludes that the protective sweep was unlawful.[2]

B. Fruit of the Poisonous Tree

As a result of the unlawful protective sweep, Defendant argues the ammunition seized pursuant to the warrant should be suppressed because it is fruit of the poisonous tree. The government argues that, even if the protective sweep was legally defective, the evidence should nonetheless be admitted under the inevitable discovery[3] and independent sources doctrines.

---

[2]Because the Court has concluded the officers did not have a sufficient basis to conduct its initial search, the Court need not decide whether the sweep was more than cursory.

[3]The "inevitable discovery doctrine" allows the admission of unlawfully obtained evidence where the "evidence . . . 'would inevitably have been discovered without reference to the police

10

The Fourth Amendment not only requires the suppression of evidence seized during an unlawful search "but also of evidence 'that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search.'" United States v. Dent, 867 F.3d 37, 40 (1st Cir. 2017) (quoting Murray v. United States, 487 U.S. 533, 536-37 (1988)).  One exception to the exclusionary rule is the "independent source doctrine" which allows the admission of "evidence acquired by an untainted search which is identical to . . . evidence unlawfully acquired." Murray, 487 U.S. at 538 (emphasis omitted).  Accordingly, "[w]hether the initial entry [into a home] was illegal or not is irrelevant to the admissibility of the challenged evidence" where "there was an independent source for the warrant under which that evidence was seized."  Segura v. United States, 468 U.S. 796, 813-14 (1984) (plurality opinion).

To determine if the exception applies, the Court must determine "first, whether the decision to seek a warrant was made

---

error or misconduct[.]'" United States v. Hughes, 640 F.3d 428, 440 (1st Cir. 2011) (quoting Nix v. Williams, 467 U.S. 431, 448 (1984)).  "Such evidence is admissible 'so long as (i) the lawful means of its discovery are independent and would necessarily have been employed, (ii) discovery by that means is in fact inevitable, and (iii) application of the doctrine in a particular case will not sully the prophylaxis of the Fourth Amendment.'" Id. (quoting United States v. Zapata, 18 F.3d 971, 978 (1st Cir. 1994)). Because the Court holds the government established that there was an independent source for the search warrant for Apartment 1, the Court need not decide whether the inevitable discovery doctrine applies here.

11

independently of what was discovered during the illegal entry, and second, whether the affidavit contains a sufficient basis for probable cause when stripped of illegally obtained material." United States v. Ramos, No. 18-092-JJM-PAS, 2019 WL 3037586, at *5 (D.R.I. July 11, 2019) (citing United States v. Flores, 888 F.3d 537, 546 (1st Cir. 2018)); see also United States v. Dessesaure, 429 F.3d 359, 367 (1st Cir. 2005).

Here, as to the first inquiry, the evidence suggests the officers on the scene made an independent judgment to seek a search warrant of Apartment 1 before the officers identified the crack cocaine during the protective sweep. In his affidavit, Ventetuolo describes how the purpose of the initial entrance into Apartment 1 was "[t]o prevent the destruction of evidence and preserve the integrity of the SUBJECT PREMISES while we sought a search warrant . . . ." GXA ¶ 14 (emphasis added); see also Ventetuolo Aff. ¶ 11. The sworn statement of Venteteuolo reflects the officers' primary concern of preserving the evidence inside the apartment (rather than to mitigate any perceived danger, see supra pp. 8-10). Moreover, after the officers completed their sweep in less than one minute, an officer stood by the front door to secure the apartment while the officers prepared a warrant. GXB ¶ 10; see Flores, 888 F.3d 537 at 546-47.

Additionally, Ventetuolo's affidavit contains a sufficient basis for probable cause even without mentioning the presence of

12

crack cocaine. Before the execution of the warrant to search and seize Defendant, officers had been surveilling Defendant and determined he regularly stayed overnight in Apartment 1. GXA ¶ 11. Prior to the search, Ventetuolo received information from a confidential source that Defendant was one of several members of the East Side gang and was involved in the distribution of fentanyl, crack cocaine, and marijuana. Id. ¶ 15. After officers searched and seized Defendant pursuant to the initial warrant, officers found marijuana in different quantities and bundles of money in Defendant's backpack. Id. ¶ 12. Upon being arrested, Defendant admitted to the officers that there was marijuana in the apartment. Id. ¶ 13. Thus, even without mentioning in the affidavit in support of the search warrant that officers observed "a small bag with white powder, similar in appearance to crack cocaine," id. ¶ 14, the above evidence gave officers an independent basis to establish probable cause to search Apartment 1 where they reasonably believed Defendant had been living.

Based on the independent source doctrine, the ammunition seized is not fruit of the poisonous tree, and thus it is admissible evidence.

III. Conclusion

    For the reasons above, Defendant's Motion to Suppress, ECF No. 32, is DENIED.

IT IS SO ORDERED.

_____
William E. Smith
District Judge
Date: September 25, 2023