UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                   )
UNITED STATES OF AMERICA,          )
                                   )
    v.                             )   Cr. No. 23-52 WES
                                   )
RYAN DACRUZ,                       )
                                   )
    Defendant.                     )
                                   )
_____)
```

MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

The government charged Defendant Mr. Ryan DaCruz with one count of felon in possession of ammunition under 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Indictment, ECF No. 21. Defendant moves to suppress all evidence seized pursuant to the warrant issued to search and seize Defendant and his cellphone on the basis that the affidavit supporting the warrant failed to establish probable cause. Mot. Suppress 1, ECF No. 39. For the following reasons, Defendant's Motion is DENIED.

I.   FACTS

Magistrate Judge Patricia Sullivan authorized the search and seizure of Defendant and his cellphone on May 30, 2023. GXA, Application for a Warrant by Telephone or Other Reliable Electronic Means ("Search Warrant") 1, ECF No 41-1. Special Agent Anthony Ventetuolo of the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF") applied for the warrant to search for and seize evidence of violations of 18 U.S.C §§ 922(g)(1) and 924(c). Id. ¶ 5. Officers from ATF and the Central Falls Police Department executed the search on May 31, 2023, at Defendant's 991 Lonsdale Avenue, Central Falls, Rhode Island residence. Mem. & Order 2, ECF No. 37.

In support of the application for a search warrant, Ventetuolo swore to the following facts:

- Defendant is a member of the East Side gang and has been part of its feud with the Chad Brown gang. Search Warrant ¶¶ 7-8;

- Defendant pled nolo contendere in state court for possession of a controlled substance and carrying a pistol without a permit for which he was sentenced to three years of probation. Id. ¶ 9;

- A shooting occurred on March 11, 2023, on Swanton Street in Providence, Rhode Island that resulted in the wounding of two persons, one a Chad Brown gang member. Id. ¶ 10-11. Prior to the shooting, the victims were at Lang's Bowlarama in Cranston, Rhode Island. Id. ¶ 11. When they drove off from the Bowlarama's parking lot, a white Honda Accord Sport followed them. Id. ¶ 12. The gunshots that struck the two victims came from the Honda Accord. Id.;

- As part of Providence Police Department's and ATF's investigation into the shooting, see id. ¶¶ 10-15, investigators reviewed cellphone data connected to the cell tower in the Swanton Street area where, and around the time when, the shooting took place, id. ¶¶ 20-21;

- The investigation revealed that the only time Defendant's cellphone connected to that cell tower – which serves the area encompassing Swanton Street and the Bowlarama - was around the time of the shooting. Id. ¶ 21;

- Defendant's cellphone connected multiple times with the cellphones of two fellow gang members who were involved in the shooting around the time it took place. See id. ¶¶ 23-27;

- One of the gang members with whom Defendant communicated on the day of the shooting, James Adams, was known by law enforcement for providing firearms and vehicles to other gang members "to use in 'active' assaults of rival gang members." Id. ¶ 26;

- A grey Acura TL that was parked in the Bowlarama parking lot and left when the white Honda Accord pulled into the parking lot was registered to the other gang member with whom Defendant was communicating, Jordan Komhlan. See id. ¶¶ 23-25.  Komhlan's phone connected to the relevant cell tower.

Id. ¶ 24. This behavior suggests Komhlan served as the "lookout" on the night of the shooting. Id. ¶ 29;

- Defendant continued to use the phone in question after March 11, 2023. See id. ¶¶ 30-39;
- The cellphones of Adams and Komhlan connected with each other three times during a ten-minute period prior to the shooting. Id. ¶ 27;
- The presence of Chad Brown gang members where the shooting took place, and the behavior of the grey Acura, suggests the victims were targeted. Id. ¶ 29.

Upon executing the search warrant and searching Defendant and his apartment, the government seized marijuana, ammunition, and crack cocaine. Mem. & Order 2-4.

II. DISCUSSION

Defendant bears the initial burden of showing a Fourth Amendment violation by a preponderance of the evidence. United States v. Matlock, 415 U.S. 164, 178 n.14 (1974); United States v. Young, 835 F.3d 13, 19 (1st Cir. 2016); United States v. Lopes, 578 F. Supp. 3d 158, 162 (D. Mass. 2021).

Probable cause requires that "the facts presented to the magistrate need only 'warrant a man of reasonable caution' to believe that evidence of a crime will be found." United States v. Soto, 799 F.3d 68, 84 (1st Cir. 2015) (quoting United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999), in turn quoting Texas v.

4

Brown, 460 U.S. 730, 742, (1983)). In other words, probable cause is a "commonsense, nontechnical conception[] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." United States v. Burhoe, 409 F.3d 5, 10 (1st Cir. 2005) (first two alterations in original) (quoting Ornelas v. United States, 517 U.S. 690, 695 (1996)).

"[T]he warrant application must demonstrate probable cause to believe that a particular person has committed a crime — 'the commission element' - and that enumerated evidence relevant to the probable criminality likely is located at the place to be searched — 'the "nexus" element.'" United States v. Zayas-Diaz, 95 F.3d 105, 110–11 (1st Cir. 1996) (quoting United States v. Fuccillo, 808 F.2d 173, 175 (1st Cir. 1987) cert. denied, 482 U.S. 905 (1987)). "As to the nexus requirement, a court need only determine that there is a '"fair probability" - not certainty - that evidence of a crime will be found in a particular location' based on the totality of the circumstances." United States v. Lindsey, 3 F.4th 32, 39 (1st Cir. 2021) (quoting United States v. Dixon, 787 F.3d 55, 60 (1st Cir. 2015)). "The nexus between the alleged crime and place to be searched may be 'inferred from the type of crime, the nature of the items sought, . . . and normal inferences as to where a criminal would hide [evidence of a crime].'" Id. (alternations

in original) (quoting United States v. Rodrigue, 560 F.3d 29, 33 (1st Cir. 2009)).

The reviewing court "must accord 'considerable deference' to the 'probable cause' determination made by the issuing magistrate." Zayas-Diaz, 95 F.3d at 111. When reviewing an affidavit supporting probable cause, the court determines its sufficiency by reviewing the "totality of the circumstances" stated within the four corners of the affidavit. United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

In reviewing the totality of the circumstances, the Court concludes the affidavit supporting the warrant sufficiently establishes probable cause that Defendant's cellphone was involved in the March 11 shooting, Defendant was in possession of that cellphone, and the cellphone had potentially relevant evidence. Defendant's cellphone's connection to the geographic area around the time of the incident, Defendant's association with the gang and its members involved in the incident, and Defendant's prior criminal history created a fair inference that the cellphone would contain evidence related to the March 11 incident and potential violations of 18 U.S.C. §§ 922(g)(1) and 924(c). See Search Warrant ¶ 5.

III. CONCLUSION

Accordingly, Defendant's Motion to Suppress, ECF No. 39, is DENIED.

IT IS SO ORDERED.

*[signature: WESmith]*

William E. Smith
District Judge
Date: November 17, 2023